## HOW TO MAKE A RETRACTION AVAILABLE AS A DEFENSE IN A LIBEL SUIT.

Circuit Court of Cuyahoga County.

THE AKRON DEMOCRAT v. LAWRENCE CONRAD.

Decided, April 15, 1907.

*Libel—Retraction—Excessive˙ Verdict.*

1. A retraction of a libel, to be available as a defense, must be un-equivocal and refer distinctly to the original article.
2. A verdict for $500 in a libel case is too much under circumstances shown here.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

The parties here are reversed from the order in which they appeared in the court below, but will be spoken of in this opinion as they were in the court below; that is, the plaintiff in error will be spoken of as the defendant, and the defendant in error will be spoken of as plaintiff.

The defendant is the publisher of a daily newspaper having a large circulation in the city of Akron and elsewhere. In its issue of ———, it published an article headed in large type, indicating that a mystery had been solved in reference to the disappearance from Akron of one Lawrence Conrad, a former resident of Akron. The article then went on to say that one resident of Akron. The article then went on to say that one Lewis, a former resident of Akron, had recently visited in the city, and had stated to a reporter of the newspaper published by the defendant, that Lawrence Conrad, whose schoolmate he had been at the Broadway school house at Akron, years ago, was recently seen by him at a town named in Nevada. The article went into details as to how Lewis came to see him, and then stated that Lewis further said that within a day or two after seeing Lawrence Conrad, he saw an account in a newspaper published near the place where he saw Conrad, that three men had been engaged in a bank robbery, and that one of the robbers had been killed and that a picture of the robber thus killed was published in the paper; that he (Lewis) at once recognized it as Lawrence

Conrad.   Then the newspaper went on to say that Conrad had
been missing from Akron for some eight or nine years; that his
·family though he might have enlisted in the army and navy
during that time and been killed, and that they had made efforts
to ascertain through the army and navy departments of the
government whether this was a fact, but had been unable to learn
that it was, and that though this publication would bring dis-
grace upon his name and pain to his relatives and friends, yet it
·cleared up the mystery of his disappearance, for the article
stated, that during all the time he had been absent from Akron,
his family had failed to hear from him.

The plaintiff sued the defendant for this publication as a
libel, and stated in his petition that it was made of and concern-
ing him, and prayed for damages.

The defendant denied that the publication was of and con-
cerning the plaintiff, and it is said that this publication could not
have been of and concerning the plaintiff, for this publication
stated that the man of whom Lewis gave them an account was a
man now dead.   The defendant further answered that the pub-
lication about whosoever it might be was made without any
malice, and without any desire to injure anybody or intent to
·injure anybody, but purely as a matter of news, and upon in-
formation which it had a right to rely upon as reliable.

It further answered that a retraction of the publication was
made within a day or two after it was made.

The original article published was introduced in evidence.   It
was further shown in evidence that the plaintiff was the only
Lawrence Conrad, who, so far as was known, had ever lived in
Akron, and he was the Lawrence Conrad who was in school with
this man Lewis.   The retraction so-called which was published, it
was claimed, was such that, under Section 5094 of the Revised
Statutes of Ohio, it rebutted entirely any presumption of malice
which arose from the publication of the original article.   With-
out stopping to quote the statute we think the retraction is not
as contemplated by the statute.   Nowhere in the retraction is it
stated or in any wise implied that the newspaper had published
any other article in reference to Lawrence Conrad.   The heading
was in large type, beginning with the word "mistake" and then

followed with other headlines, in large type, and then the article went on to say that Lewis had made a mistake in stating that Lawrence Conrad had been killed while a bank robber, and went on further that Lawrence was a very respectable man living in Akron,  But as tending to show at least that the defendant recognized that the publication so made was of the plaintiff, it is stated in the so-called retraction that Lawrence Conrad, of whom Lewis had made the statements in reference to his being killed in a bank robbery, had called at the office of the defendant and told his story.

It would seem from this that there could be no doubt that the defendant recognized that the article which it had published was of the plaintiff.

Proceeding to say something of the sufficiency of the retraction under the statutes, attention is called to the case of *Gray* v. *Times Newspaper Co.*, decided by the Supreme Court of Minnesota, and reported in 77 Northwestern Reporter, at page 204.  An examination of that case will show that the so-called retraction there published was more full than the one published in this case; the court says, speaking of such retraction:

"The statute does not require the retraction to be in any particular form.  It must, however, clearly refer to and admit the publication of the article complained of, and directly, fully and fairly, without any uncertainty, evasion or subterfuge, retract (that is recall) the alleged false and defamatory statements thereon.  It is necessary that the retraction should refer to the original publication, in order to be fair, because the purpose of the statute in requiring a publication of the retraction in the next issue of the newspaper after service of the notice and in as conspicuous a place and type as was the article complained of, is to eradicate so far as possible from the minds of the persons who read the libel the false and unfavorable impressions of the plaintiff engendered thereby."

Our statute, in its provisions as to retraction says, that it may be made "upon demand and within a reasonable time."

On the part of the plaintiff in this case it is insisted that the publication of this so-called retraction was not made upon demand; whereas on the part of the defendant it is insisted that

what took place at its office at the time the plaintiff called upon them was in effect a demand.

We regard it as unnecessary to determine whether a retraction of a publication without a demand would be equally effective to release the publisher from the imputation of malice as one publication upon demand, and we deem it unnecessary to determine whether this so-called retraction was published upon demand; for we agree with the language used by the trial judge that this publication was not a retraction.

From the evidence it is clear that the defendant did not make the publication with any desire to injure the plaintiff, or anybody else, although it recognized, as appears by the article itself, that it would bring disgrace upon the name of the man about whom it was published; but, in its earnest desire for early news it made this publication as we think, without sufficient investigation, and under such circumstances that the plaintiff is entitled to compensatory damages for that publication. But from the fact that in the very nature of things, those who knew the plaintiff at all must have known that the publication was not true, because they must have known that he had not been absent from Akron for eight years or more, as the article stated, we think the damages assessed, namely, $500, was altogether too high, and unless the plaintiff will remit from this judgment the sum of $350, the judgment will be reversed and the case remanded for a new trial. If such remittitur is made the judgment for the $150 remaining will be affirmed.